******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BENJAMIN LIGERI *v.* WHITE ROAD CAPITAL, LLC, SERIES 168814 ET AL.
## (AC 48077)

Elgo, Clark and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting, on standing grounds, motions to dismiss filed by the defendants. He claimed, inter alia, that the court improperly concluded that he lacked standing to prosecute the underyling action because he was not a party to the contracts that formed the basis of the action. *Held*:

The trial court did not abuse its discretion in denying the plaintiff's request for an evidentiary hearing in accordance with *Standard Tallow Corp.* v. *Jowdy* (190 Conn. 48), as the plaintiff never claimed before the court that any disputed issues of fact needed to be resolved with respect to whether he was a proper party to invoke judicial resolution of the disputes alleged in the complaint.

The trial court properly dismissed the action as to all defendants with respect to the count of the plaintiff's complaint seeking a declaratory judgment, as the plaintiff failed to demonstrate that he was the proper party to request the declaratory relief sought because that request arose entirely out of contracts between a nonparty, C Co., and the defendants, the plaintiff was not a party to those contracts, and, although, he was an individual guarantor of C Co.'s performance obligations, that status was not sufficient to confer standing on the plaintiff in his individual capacity.

The trial court improperly dismissed three counts of the plaintiff's complaint directed against the defendant A Co. that sound in tortious interference with business expectancies, negligent misrepresentation, and a violation of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.), as the allegations made in support of those counts, namely, that A Co.'s unauthorized or illegal actions resulted in the freezing of the plaintiff's personal PayPal account, demonstrated that he arguably had some direct and personal interest in those causes of action.

Argued September 15, 2025—officially released March 10, 2026

*Procedural History*

Action seeking, inter alia, a declaratory judgment as to the rights and remedies of parties to certain accounts receivable factoring agreements, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Spallone, J.*, denied the plaintiff's motion for an evidentiary hearing; thereafter,

the court, *Spallone, J.*, granted the defendants' motions to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part; further proceedings*.

*Edward E. Bona*, for the appellant (plaintiff).

*Jared M. Alfin*, with whom, on the brief, was *Forrest A. Noirot*, for the appellee (named defendant).

*Gary J. Greene*, with whom, on the brief, was *Christopher Ryan Boy*, for the appellee (defendant The Fundworks, LLC).

*Opinion*

WESTBROOK, J. The plaintiff, Benjamin Ligeri, appeals from the judgment of the trial court granting, on standing grounds, motions to dismiss filed by the defendants, White Road Capital, LLC, Series 168814, doing business as GFE Holdings (White Road); The Fundworks, LLC (Fundworks); and Advance Servicing, Inc. (Advance).[1] On appeal, the plaintiff claims that the court improperly (1) granted the defendants' motions to dismiss without first conducting an evidentiary hearing in accordance with *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983), and (2) concluded that the plaintiff lacked standing to prosecute the underlying action because he was not a party to the contracts that formed the basis of the action. We agree with the plaintiff that the court improperly dismissed the action with respect to counts two, three and four of the complaint directed solely against Advance and remand for further proceedings on those counts; we otherwise affirm the judgment of the trial court.[2]

The following procedural history and facts, as alleged in the operative complaint or necessarily implied by

---

[1] Advance did not file a brief with this court or otherwise participate in the present appeal.

[2] The plaintiff also raises as a third claim that the court improperly determined that it lacked subject matter jurisdiction to render the declaratory judgment sought by the plaintiff in count one of the complaint.

those allegations, are relevant to this appeal. See *May* v. *Coffey*, 291 Conn. 106, 108, 967 A.2d 495 (2009). The plaintiff is a resident of Voluntown and the owner and principal of Central Concepts, Inc. (Central), a Rhode Island corporation. Central is a third-party logistics provider for Amazon, Inc. (Amazon), and relies on Amazon for its revenue. In his capacity as principal for Central, the plaintiff executed certain "accounts receivables factoring contracts" (contracts) with each of the defendants, all nonresident business entities.[3] Pursuant to the contracts, the defendants agreed to make up-front payments to Central in exchange for Central's future receivables from Amazon.[4] The plaintiff, in his individual capacity, also executed personal guaranties of Central's contractual obligations.

The plaintiff commenced the underlying action in August, 2023. The operative amended complaint contains four counts. Count one is directed at all three of the defendants and seeks a declaratory judgment. Specifically, the plaintiff asked the court to declare that no sums are due from Central to the defendants under the parties' contracts, and that no executions of any judgments obtained against Central may issue in Connecticut unless and until Central receives funds that it claims

---

Given our conclusion that the plaintiff lacked standing with respect to count one, it is unnecessary for us to address that claim.

[3] White Road is a New York limited liability company, Fundworks is a California limited liability company, and Advance is a company incorporated in New Jersey.

[4] The complaint is not a model of clarity with respect to the precise nature of the business relationships between the various parties. According to the complaint, "once products [were] sold through [Amazon's] platform, [Amazon would decide] what its fees [were] for storage, inventory and listing through its platform, after which it [would] disperse money to Central's account with Webster Bank." According to the plaintiff, each of Central's accounts receivables factoring contracts with the defendants provide that the defendants are not due any proceeds or sums under the contracts until Amazon first places funds into Central's bank account. Moreover, the plaintiff alleges that Amazon started destroying inventory belonging to the plaintiff and Central and withholding funds by refusing to deposit funds due to Central into its bank account.

are due to it from Amazon.[5] Counts two, three and four were directed against Advance only and sound in, respectively, tortious interference with business expectancies, negligent misrepresentation, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. All three of the counts against Advance relied in part on allegations that Advance had frozen the plaintiff's individual PayPal account without authorization to do so.

The defendants each filed motions to dismiss the operative complaint, in which they argued, inter alia, that Central, and not the plaintiff in his individual capacity, is the real party in interest with respect to any and all of the harms alleged in the operative complaint and, therefore, the plaintiff in his individual capacity lacked standing to bring the action. The motions to dismiss also raised whether Connecticut was a proper forum in which to bring the action in light of a forum selection clause in the contracts and whether the court had personal jurisdiction over the nonresident defendants.

In response, the plaintiff first filed a motion for order in which he requested that the court hold an evidentiary hearing pursuant to *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 48, to address a number of issues relevant to whether the court could exercise jurisdiction over the defendants pursuant to the state's long arm statute, General Statutes § 52-59b, and whether Connecticut was the proper forum in which to bring the

---

[5] The plaintiff argues in his appellant's brief that "[a]ll three of the defendants had both threatened and begun to take actions against the plaintiff in this forum to collect on debts owed by [Central], declaring Central in breach of its respective agreements with them and asserting funds to be immediately due from the plaintiff." The only action described in the record is a civil action that Advance apparently commenced in May, 2023, not "in this forum," but in the state of New York (New York case). In the New York case, Advance raised claims that Central had defaulted on its contractual obligations with Advance and that the plaintiff had defaulted on his guaranty of Central's performance. The plaintiff and Central purportedly filed a motion to dismiss the New York case on the ground of alleged improper service of process, but the record does not reflect the present status of the New York case.

action. In that motion, the plaintiff did not claim that there were any disputed issues of fact relevant to the issue of the plaintiff's standing to bring the action. The court, *Spallone, J.*, denied the motion for order without comment.

The plaintiff subsequently filed a memorandum in opposition to the motions to dismiss, attaching an affidavit by the plaintiff. Similar to the plaintiff's motion for order, the plaintiff's opposition only addressed the defendants' assertions in the motion to dismiss suggesting that Connecticut was not the proper venue for the action and that the court lacked personal jurisdiction over the defendants. The plaintiff did not address the arguments in the motions to dismiss that he lacked standing to maintain the action.

The court conducted a hearing on the motions to dismiss on April 1, 2024. On July 23, 2024, the court granted the motions and rendered judgment dismissing the action. In its order, the court agreed with the defendants that the plaintiff was not the proper party to bring the action. Moreover, because it granted the motions to dismiss on standing grounds, the court elected not to address the other grounds raised in the defendants' motions to dismiss. The court explained that the plaintiff had brought the action in his individual capacity as a guarantor of Central, and Central was not a party to the action. Relying on the reasoning in several Superior Court cases that had addressed the issue of guarantors and standing, the court concluded that the plaintiff lacked standing to assert claims that legally belonged to Central, and, in the absence of allegations in the complaint tending to demonstrate some direct and personal injury to the plaintiff that was separate and distinct from Central, the plaintiff lacked standing, and the action must be dismissed.[6]

The plaintiff filed a motion to reargue and for reconsideration and also filed a motion for extension of time

[6] Judge Spallone's order stated in relevant part: "The issue of guarantors and standing has been taken up in several Superior Court cases. As

to file an appeal. The defendants opposed the plaintiff's motion to reargue and for reconsideration, which the court denied without comment. The plaintiff timely filed the present appeal.

Before addressing the plaintiff's claims, we set forth governing legal principles, including our standard of review. Practice Book § 10-30 (a) provides in relevant part that "[a] motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter . . . ." It

Judge Pierson held in *Fischer* v. *People's United Bank, N.A.*, Superior Court, judicial district of Ansonia-Milford at Milford, [Docket No. CV-20-6040118-S] (August 3, 2021), [aff'd in part, 216 Conn. App. 426, 285 A.3d 421 (2022), cert. denied, 346 Conn. 904, 287 A.3d 136 (2023)]: Guarantors may not recover affirmatively on the debtor's claims, usually because they lack standing, in the absence of damages that are independent from those suffered by the principal . . . . 38 Am. Jur. 2d, Guaranty § 88 (May 2021 Update). Put another way, [i]n order to assert an affirmative claim against a lender, a guarantor must establish that he suffered a direct injury as a result of the lender's alleged breach against the principal, which is independent from and not merely derivative of the resulting injury suffered by the principal. . . . *Performance Electric, Inc.* v. *CIB Bank*, 371 Ill. App. 3d 1037, 1040, 864 N.E.2d 779 (2007).

"Judge Pierson went on to note that this position on the standing of guarantors has generally been adopted by our courts: Connecticut courts have adopted this view. For example, in *Beerwald* v. *Hearth Management, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-14-5034796-S (June 1, 2015), it was alleged that the defendants coerced [one of the named plaintiffs] into executing a guarantee agreement on behalf of [the other plaintiff]. The defendants moved to dismiss the claims brought by the plaintiff guarantor, on the grounds that she lacked standing because she has failed to allege that she has sustained a direct injury. . . . [The guarantor] is merely seeking to recover for [the other plaintiff's] alleged injuries. In the absence of a direct and personal injury, the defendants argue, the court lacks subject matter jurisdiction over [the guarantor's] claims. Id. The *Beerwald* court agreed with the defendants, citing 38 Am. Jur. 2d, Guaranty § 98 (2015), and *Miller* v. *U.S. Bank of Washington, N.A.*, 72 Wn. App. 416, 865 P.2d 536 (1994), inter alia, for the principle that a guarantor lacks standing to assert rights on behalf of a principal debtor. Accord *Peterson* v. *Parillo*, Superior Court, judicial district of New Haven, Docket No. CV-03-0477220-S (December 8, 2005) (a guarantor may not recover affirmatively on the claims of the principal debtor [quoting *Miller* v. *U.S. Bank of Washington, N.A.*, supra, 424]).

"The court finds Judge Pierson's analysis above and the cases cited therein persuasive. The defendants' motions to dismiss are granted." (Internal quotation marks omitted.)

is axiomatic that "a plaintiff must have standing for the court to have [subject matter] jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . The standing requirement is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 552–53, 698 A.2d 245 (1997). Because the issue of standing implicates subject matter jurisdiction, it is a proper ground for the granting of a motion to dismiss pursuant to Practice Book § 10-30 (a). "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *North Branford Citizens Against Bulk Propane Storage* v. *North Branford*, 230 Conn. App. 335, 341, 330 A.3d 196 (2025). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) Id., 342.

I

The plaintiff first claims that the court improperly granted the defendants' motions to dismiss without first conducting an evidentiary hearing in accordance with *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 56. Because the plaintiff failed to raise and demonstrate to the trial court that a determination regarding his standing to bring the underlying action was dependent on the court's resolution of any critical factual disputes, we disagree with the plaintiff that the court was required to

hold an evidentiary hearing before granting the motions to dismiss.

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book § 10-30] may encounter different situations, depending on the status of the record in the case. . . . [If] a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence

of an evidentiary hearing . . . because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 615–17, 109 A.3d 903 (2015). An evidentiary hearing to resolve disputed jurisdictional facts is sometimes referred to as a *Standard Tallow* hearing after our Supreme Court's decision in *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 48, which held, in part, that whenever resolution of disputed "issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." Id., 56. "[I]t is the plaintiff's burden both to request an evidentiary hearing and to present evidence that establishes disputed factual allegations in support of an evidentiary hearing," and, if the plaintiff fails to do either, the court properly may decide the motion to dismiss on the basis of the pleadings and any affidavits provided. *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 371, 996 A.2d 1195 (2010). "We review the denial of a request for an evidentiary hearing under the abuse of discretion standard." *St. Denis-Lima* v. *St. Denis*, 190 Conn. App. 296, 303, 212 A.3d 242, cert. denied, 333 Conn. 910, 215 A.3d 734 (2019).

In his motion seeking an evidentiary hearing, the plaintiff stated that an evidentiary hearing was necessary to resolve properly whether (1) with respect to count one, the defendants had "reached into this jurisdiction" in such a fashion as to trigger § 52-59b, the state's long arm statute, and (2) with respect to the remaining counts, whether Advance had committed one of the alleged torts against the plaintiff "from without the state" using computers and computer networks or whether Advance expected or reasonably should have expected its actions to have consequences in Connecticut. The plaintiff did not argue in any respect that any disputed facts existed pertaining to whether he had a direct and personal interest in the litigation and, thus, had standing to bring the

action.[7] Moreover, as the defendant Fundworks aptly argues in its brief with respect to count one of the complaint, the complaint was "completely and utterly devoid of any factual allegations that the trial court could reasonably view as a claim of harm suffered by the plaintiff . . . at the hands of [the defendants] . . . [and] [a]bsent a pleading stating a claim of actual harm, there [was] no basis for a *Standard Tallow* hearing to occur."

It bears repeating that the trial court strictly limited its ruling on the motions to dismiss to the issue of whether the plaintiff was the proper party to assert the claims alleged in the complaint. The court did not reach the defendants' additional arguments regarding choice of law, improper venue, or whether the court had personal jurisdiction over the defendants under the applicable long arm statute. Because the plaintiff never claimed before the trial court that any disputed issues of fact needed to be resolved with respect to whether he was a proper party to invoke judicial resolution of the disputes alleged in the complaint, we cannot conclude that the court abused its discretion by denying the plaintiff's request for an evidentiary hearing.

## II

The plaintiff also claims that the court improperly concluded that the plaintiff, who is a guarantor of Central's obligations under its contracts with the defendants but not a party to those contracts, lacked standing to bring the underlying action. Although we conclude that the plaintiff has failed to demonstrate that he has standing to pursue the declaratory relief sought in count one of the complaint, we agree that he has alleged facts demonstrating some potential personal interest in the causes of action brought against Advance as alleged in counts two, three, and four of the operative complaint. Accordingly, the court should not have dismissed those counts on standing grounds.

---

[7] In his appellant's brief, the plaintiff himself describes his motion for an evidentiary hearing as having sought "to address the issues of whether the defendants acted tortiously in this state."

A

We first address whether the plaintiff had standing to prosecute count one of the complaint, which sought a declaratory judgment. We agree with the trial court that he does not.

"It is a basic principle of our law . . . that the [plaintiff] must have standing in order for a court to have jurisdiction to render a declaratory judgment. . . . A party pursuing declaratory relief must therefore demonstrate, as in ordinary actions, a justiciable right in the controversy sought to be resolved, that is, contract, property or personal rights . . . as such will be affected by the [court's] decision . . . ." (Citation omitted; internal quotation marks omitted.) *North Branford Citizens Against Bulk Propane Storage* v. *North Branford*, supra, 230 Conn. App. 342. "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized . . . to bring an action . . . ." (Internal quotation marks omitted.) *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, 197 Conn. App. 269, 274, 231 A.3d 386 (2020). "[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001).

In the present case, count one of the complaint seeks a declaration as to each defendant that no sums are due and owing from Central under the parties' contracts and

no executions of any judgments obtained against Central may issue in Connecticut until Central receives the funds it contends it is due from Amazon. In other words, the request for declaratory relief arises entirely out of the contracts between Central and the defendants. It is undisputed that the plaintiff in his individual capacity is not a party to those contracts. Although the plaintiff is an individual guarantor of Central's performance obligations, as the trial court determined, that status is not enough to confer standing on the plaintiff in his individual capacity to prosecute claims arising out of the contracts. "A guarantee . . . is a contract, in which a party, sometimes referred to as a secondary obligor, contracts to fulfill an obligation upon the default of the principal obligor. . . . Our Supreme Court has recognized the general principle that a guarantee agreement is a separate and distinct obligation from that of the . . . other obligation. . . . [A] guarantor's liability does not arise from the . . . other obligation secured by the [principal obligor's contract]; rather, it flows from the separate and distinct obligation incurred under the guarantee contract." (Internal quotation marks omitted.) *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, supra, 197 Conn. App. 275.

Moreover, although the plaintiff is the owner and principal of Central, he filed this action solely in his own name, i.e., in his individual capacity. Corporations are separate and distinct legal entities; see *Commissioner of Environmental Protection* v. *State Five Industrial Park, Inc.*, 304 Conn. 128, 139, 37 A.3d 724 (2012); and, because the plaintiff is not an attorney, he cannot represent Central in this action. See *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 34 Conn. App. 543, 546–47, 642 A.2d 62 ("A corporation may not appear by an officer of the corporation who is not an attorney. . . . This is so, despite the fact that the officer may be the principal shareholder of that corporation." (Citation omitted; internal quotation marks omitted.)), cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994). Furthermore, it is well established that a shareholder

may not bring an action in his individual capacity seeking to recover for an injury to the corporation. See *May* v. *Coffey*, 291 Conn. 106, 115, 967 A.2d 495 (2009) ("[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation" (internal quotation marks omitted)). The plaintiff has offered no explanation why he did not have the present action brought on behalf of Central rather than commencing it in his name.

On the basis of our review of the record and briefs, we conclude that the plaintiff has failed to demonstrate that he is the proper party to request the declaratory relief sought in count one of the complaint. Accordingly, the court properly dismissed the action as to all defendants with respect to count one.

## B

We next consider whether the plaintiff had standing to pursue counts two, three and four of the complaint, which were directed only against Advance. We agree with the plaintiff that the allegations made in support of these counts demonstrate that the plaintiff arguably has some direct and personal interest in these causes of action. Accordingly, we conclude that the court improperly dismissed counts two, three and four on standing grounds.

As previously stated, counts two, three, and four of the complaint are directed against Advance only, and sound in, respectively, tortious interference with business expectancies, negligent misrepresentation, and a violation of CUTPA. Among the factual allegations that the plaintiff makes in support of these counts is that Advance took unauthorized or illegal actions that resulted in the freezing of his personal PayPal account. In other words, the plaintiff alleges that he was directly and personally injured by Advance's actions. We note that Advance did not file an appellee's brief on appeal disputing the plaintiff's arguments regarding his standing to pursue the counts directed solely against it. Assuming, as we

must, that the plaintiff's allegations are true, Advance interfered with the plaintiff's personal finances related to running his business. Accordingly, we are convinced that the plaintiff has made a colorable claim of direct injuries to himself individually and that the allegations are sufficient to demonstrate standing to prosecute the counts of the complaint directed against Advance alone.[8] See *Bernblum* v. *Grove Collaborative, LLC*, 211 Conn. App. 742, 760–61, 761 n.13, 274 A.3d 165 (holding plaintiff business owner lacked standing in individual capacity to prosecute counts related to contracts in which his business, but not himself individually, was party, but plaintiff's allegations in complaint posed colorable claim of direct injuries to plaintiff individually sufficient to withstand standing challenge with respect to certain tort counts), cert. denied, 343 Conn. 925, 275 A.3d 626 (2022). Accordingly, we conclude that the court improperly granted Advance's motion to dismiss with respect to counts two, three and four of the complaint.

The judgment is reversed with respect to counts two, three, and four of the operative complaint and the case is remanded for further proceedings in accordance with law on those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] Our conclusion regarding standing should not be misconstrued as taking any position regarding the relative merits of these counts including whether, as a whole, the allegations state a claim on which relief may be granted.